## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION


MARY B. McCLOUD,                  :

    Plaintiff,                  :

vs.                  :                  CA 16-00183-C

NANCY A. BERRYHILL,                  :
Acting Commissioner of                  :
Social Security,[1]                  :

    Defendant.                  :


## <u>MEMORANDUM OPINION AND ORDER</u>

Social Security Claimant/Plaintiff Mary B. McCloud brought this

action under 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a

final decision of the Defendant Commissioner of Social Security (the

"Commissioner") denying his applications for a period of disability ("PoD")

and disability insurance benefits ("DIB") under Title II of the Social Security

Act, 42 U.S.C. § 401, *et seq.* The parties have consented to the exercise of

jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all

proceedings in this Court. (Doc. 26 ("In accordance with the provisions of 28

U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties in this case consent to have

a United States Magistrate Judge conduct any and all proceedings in this

---

[1] Nancy A Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d), Fed. R. Civ. P., Berryhill is substituted for Carolyn W. Covin as the proper defendant in this case.

case, including the trial, order the entry of a final judgment, and conduct all post-judgment proceedings.")).

Upon consideration of the briefs of the parties, (Docs. 18 & 23), the administrative record, (Docs. 14-15), (hereinafter cited as "(R. [page number(s) in lower-right corner of transcript])"), and the arguments presented during the hearing held on February 22, 2017, it is determined that the Commissioner's decision is due to be **AFFIRMED**.[2]

## I.     Background

McCloud was born on February 21, 1961, (R. 238 [SSA Ex. 1E]). McCloud completed two years of college. (R. 248 [SSA Ex. 2E]). McCloud was employed as a secretary at a business called Country Store, (R. 55), as a secretary for the Adult Education Division at Wallace Community College, (R. 56), and as an office administrator for the State of Alabama, Department of Post-Secondary Education, for approximately thirteen (13) years, from 1998 to 2011, (R. 57; R. 243 [SSA Ex. 3E]).

McCloud filed applications for PoD and DIB with the Social Security Administration (the "SSA")[3], on February 26, 2013. (R. 27). In McCloud's

---

[2] Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Doc. 26 ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court.")).

[3] "The Social Security Act's general disability insurance benefits program ('DIB') provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. See 42 U.S.C. 423." *Sanders v. Astrue*, No 11-049-N, 2012 WL 4497733, at *3 (S.D.

application, she alleged disability beginning on January 1, 2011. [4]  (R. 27).

After McCloud's claim was denied, she requested a hearing, which was held

via videoconference before an Administrative Law Judge ("ALJ") for the SSA

on April 15, 2015.  (R. 27).  On July 29, 2015, the ALJ issued an unfavorable

decision on McCloud's claims, finding her "not disabled" under sections 216(i)

and 223(d) of the Social Security Act.  (R. 24-47).

McCloud requested review of the ALJ's decision by the Appeals Council

for the SSA's Office of Disability Adjudication and Review.  (R. 15-16).  The

Appeals Council denied McCloud's request for review on April 28, 2016,

which made the ALJ's the final decision of the Commissioner.  (R. 1-6).  On

May 2, 2016, McCloud filed this action pursuant to § 405(g)[5] and § 1383(c)(3)[6]

to review the final decision of the Commissioner.  (Doc. 1, at 1).

## II.    Standard of Review

"In Social Security appeals, [the Court] must determine whether the

---

Ala. Sept. 28, 2012).

[4] "For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she [was] insured.  42 U.S.C. § 423(a)(1)(A) (2005)."  *McCloud v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam).

[5] "Any individual, after any final decision of the Commissioner . . . made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner . . . may allow."  42 U.S.C. § 405(g).

[6] "The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."  42 U.S.C. 1383(c)(3).

Commissioner's decision is supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citations and internal quotations omitted). The Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Id.* (citations omitted). "Even if the evidence preponderates against the Commissioner's findings, [the Court] must affirm if the decision reached is supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (citing *Sewell v. Bowen*, 792 F.2d 1065, 1067 (11th Cir. 1986); *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); and *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). "Yet, within this narrowly circumscribed role, [the Court does] not 'act as automatons.'" *Bloodsworth*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citing *Ware v. Schweiker*, 651 F.2d 408, 411 (5th Cir. 1981), *cert. denied*, 455 U.S. 912, 102 S. Ct. 1263, 71 L. Ed. 2d 452 (1982)). The Court "must scrutinize the record as a whole, [*Ware*, 651 F.2d at 411]; *Lewis v. Weinberger*, 515 F.2d 584, 586-87 (5th Cir. 1975), to determine if the decision reached is reasonable, *Simmons v. Harris*, 602 F.2d 1233, 1236 (5th Cir. 1979), and supported by substantial evidence, *Scharlow v. Schweiker*, 655 F.2d 645, 648 (5th Cir. 1981)." *Bloodsworth*, 703 F.2d at 1239.

"In contrast to the deferential review accorded to the [Commissioner's]

findings of fact, the [Commissioner's] conclusions of law, including applicable review standards are not presumed valid." *Martin*, 894 F.2d at 1529 (citing *MacGregor*, 786 F.2d at 1053; *Smith v. Heckler*, 707 F.2d 1284, 1285 (11th Cir. 1983), *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982); *Smith v. Schweiker*, 646 F.2d 1075, 1076 (5th Cir. Unit A June 1981). "The [Commissioner's] failure to apply the correct legal standard or to provide the reviewing court with sufficient basis for a determination that proper legal principles have been followed mandates reversal." *Martin*, 894 F.2d at 1529 (citing *Gibson v. Heckler*, 779 F.2d 619, 622 (11th Cir. 1986); *Bowel v. Heckler*, 748 F.2d 629, 635-36 (11th Cir. 1984); *Smith*, 707 F.2d at 1285; *Wiggins*, 679 F.2d at 1389; *Ambers v. Heckler*, 736 F.2d 1467, 1470 (11th Cir. 1984)).

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips v. Barnhart*, 357 F.3d 1232, at 1237-39 (11th Cir. 2004)).

### III.    Claims on Judicial Review

1.    "Ms. McCloud has a 'severe' psychological impairment, the [ALJ] erred in his evaluation[.]" (Doc. 18, at 1).

2.    "The [ALJ] erred in his evaluation of psychological medical source opinions[.]" (Doc. 18, at 1).

3.    "The [ALJ] did not conduct a full and fair hearing[.]" (Doc. 18, at 1).

4.    "The [ALJ]'s [RFC] finding is not rooted in the record[.]" (Doc. 18, at 1).

### IV.    Analysis

"At the first step, the ALJ must consider the claimant's current working situation.  If the claimant is 'doing substantial gainful activity, [the ALJ] will find that [the claimant is] not disabled.'" *Phillips*, 357 F.3d at 1237 (alterations in original) (quoting 20 C.F.R. § 404.1520(a)(4)(i) & (b)).  "If however, the claimant is not currently 'doing gainful activity' then the ALJ moves on to the second step." *Phillips*, 357 F.3d at 1237.  At the first step, the ALJ determined McCloud had "not engaged in substantial gainful activity since January 1, 2011, the alleged onset date." (R. 29).

At the second step, the ALJ is to "consider the medical severity of [the claimant's] impairment(s)."  20 C.F.R. § 404.1520(a)(4)(ii).  When considering the severity of the claimant's medical impairments, the ALJ must determine whether the impairments, alone or in combination, "significantly limit" the claimant's "physical or mental ability to do basic work skills."  20 C.F.R. § 404.1520(c).  If the ALJ concludes that none of the claimant's impairments are medically severe, the ALJ is

6

to conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii) & (c). If, however, the ALJ concludes that the claimant's impairments are medically severe, then the ALJ moves on to the third step.

*Phillips*, 357 F.3d at 1237 (alterations in original). At Step Two, the ALJ determined McCloud had the following non-severe impairments, which are severe in combination:

> 50% (mild) stenosis of the carotid arteries; history of cerebral congenital abnormality of undeveloped left-sided cerebrum; mild-to-moderate cardiomegaly; history of placement of drug-eluting stent of mid left anterior descending artery; status post sling implantation secondary to history of stress urinary incontinence secondary to urethral hypermobility; questionable reports of chest pain; history of obesity; hypertension, benign; tobacco abuse; history of anemia; questionable lumbago; questionable fibromyalgia; mild mixed sensory motor peripheral neuropathy of bilateral lower extremities; and mild carpal tunnel syndrome, left, and status post release, right.

(R. 29).

> At the third step, the ALJ again considers the "medical severity of [the claimant's] impairment(s)" in order to determine whether the claimant's impairment(s) "meets or equals" one of the listed disabilities. 20 C.F.R. § 404.1520(a)(4)(iii). Although the list is too voluminous to recite here, the idea is that the listings "streamline[ ] the decision process by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." *Bowen v. Yuckert*, 482 U.S. 137, 153, 107 S. Ct. 2287, 2297, 96 L. Ed. 2d 119 (1987). If the ALJ concludes that the claimant's impairments meet or equal one of the listed disabilities and meet the duration requirement, the ALJ will conclude that the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(iii) & (d). If, however, the ALJ concludes that the claimant's impairments do not meet or equal the listed impairments, then the ALJ will move on to step four.

*Phillips*, 257 F.3d at 1238 (alterations in original). At Step Three, the ALJ

found that McCloud "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" in 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. (R. 34).

> At the fourth step, the ALJ must assess: (1) the claimant's [RFC]; and (2) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Moreover, the ALJ will "assess and make a finding about [the claimant's RFC] based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to her past relevant work under the fourth step; and (2) can adjust to other work under the fifth step . . . . 20 C.F.R. § 404.1520(e).
>
> If the claimant can return to her past relevant work, the ALJ will conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past relevant work, the ALJ moves on to step five.
>
> In determining whether [a claimant] can return to her past relevant work, the ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That is, the ALJ must determine if the claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (alterations in original) (footnote omitted). At the fourth step, the ALJ assessed that McCloud had the RFC:

> [T]o perform medium work as defined in 20 CFR 404.1567(c) with the following exceptions and considerations: the claimant can stand and/or walk at least two hours without interruption and a total of at least six hours over the course of an eight-hour workday. The claimant can sit at least two hours without interruption and a total of at least six hours over the course of an eight-hour workday. The claimant cannot climb ropes, poles or scaffolds. The claimant can occasionally climb ladders, ramps

and stairs. The claimant can frequently balance, stoop, kneel and crouch. The claimant can occasionally crawl. The claimant can frequently work in humidity, wetness and extreme temperatures. The claimant cannot work at unprotected heights. The claimant cannot work with operating hazardous machinery. The claimant can frequently work while exposed to vibration. The claimant can frequently operate motorized vehicles.

(R. 34). The ALJ determined McCloud is "capable of performing past relevant work as an administrative clerk (light, semiskilled) Dictionary of Occupational Titles #219.361-010; and secretary (sedentary, skilled) Dictionary of Occupational Titles #201.362-030. This work does not require the performance of work-related activities precluded by the claimant's [RFC]." (R. 42). The ALJ concluded McCloud was not "under a disability as defined in the [SSA], from January 1, 2011, through the date of this decision." (R. 42).

## A.    Claim 1

At step two of the Social Security Regulations' five-step, sequential evaluation process, which is used to determine whether a claimant is disabled:

> [T]he ALJ is to "consider the medical severity of [the claimant's] impairment(s)." 20 C.F.R. § 404.1520(a)(4)(ii). When considering the severity of the claimant's medical impairments, the ALJ must determine whether the impairments, alone or in combination, "significantly limit" the claimant's "physical or mental ability to do basic work skills." 20 C.F.R. § 404.1520(c). If the ALJ concludes that none of the claimant's impairments are medically severe, the ALJ is to conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii) & (c). If, however, the ALJ concludes that the claimant's impairments are medically severe, then the ALJ moves on to the third step.

*Phillips*, 357 F.3d at 1237 (alterations in original).

> Step two is a threshold inquiry. It allows only claims based on the most trivial impairments to be rejected. The claimant's burden at step two is mild. An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience. Claimant need show only that her impairment is no so slight and its effect is not so minimal.

*McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986).

At step two, the ALJ is only tasked with determining whether the claimant has a severe impairment. At step two, the ALJ determined McCloud's numerous non-severe impairments were severe in combination, and moved on to the third step. (R. 29). Therefore, the question of whether the ALJ erred in evaluating McCloud's psychological impairments, as McCloud claims, is irrelevant since the ALJ found McCloud's impairments were severe.

For these reasons, the Court **OVERRULES** McCloud's assertion of reversible error in Claim 1.

### B.      Claim 2

Under Social Security Ruling 96-6p:

> [T]he opinions of State agency medical and psychological consultants and other program physicians and psychologists can be given weight only insofar as they are supported by evidence in the case record, considering such factors as the supportability of the opinion in the evidence including any evidence received at the Administrative Law Judge and Appeals Council levels that was not before the State agency, the consistency of the opinion with the record as a whole, including other medical opinions,

and any explanation for the opinion provided by the State agency medical or psychological consultant or other program physician or psychologist.

SSR 96-6p, *rescinded and replaced by* SSR 17-2p.[7]

On June 3, 2013, McCloud reported to psychologist Richard S. Reynolds, Ph. D., for a disability determination evaluation. (R. 418-21 [SSA Ex. 7F]). Dr. Reynolds concluded:

> In my opinion, information in the DDS file and patient presentation do not support deficits in ability to understand information in a work setting. Ability to remember and carry out instructions in a work place is currently moderately impaired. [McCloud] is likely to have mild deficits in ability to interact appropriately with the public, supervisors, co-workers, and routine work stressors due to Mood Disorder, NOS. In my opinion, [ ] McCloud should be scheduled to receive a Wechsler Memory Scale to further document claims regarding poor memory.

(R. 421 [SSA Ex. 7F]). On July 10, 2013, McCloud completed the Wechsler Adult Intelligence Scale, Fourth Edition (the "Wechsler AIS"), which was administered by Dr. Reynolds. (R. 423-24 [SSA Ex. 8F]). From McCloud's results from the Wechsler AIS, Dr. Reynolds concluded:

> Test scores on the Wechsler Memory Scale-Fourth Edition are not sufficient for diagnosis of Cognitive Disorder, NOS. Problems with memory alleged by the patient at the evaluation on 06/03/2013 are not substantiated. It is likely that other diagnoses likely affect the client's attention and concentration. I do believe the client is likely to have moderate deficits in ability to remember and carry[ out] instructions in a work environment due to Mood Disorder, NOS, Anxiety Disorder, NOS, and Obsessive Cognitive Disorder.

(R. 424 [SSA Ex. 8F]).

---

[7] Social Security Ruling 17-2p became effective on March 27, 2017.

The ALJ assigned Dr. Reynolds's opinion from the June 3, 2013, evaluation "no weight" and Dr. Reynolds's opinion from the July 10, 2013, evaluation "some, but not great weight" because:

> [Dr. Reynolds's] initial conclusions, as he eventually conceded, were not supported by medical determination. His initial conclusions were clearly based on [McCloud's] subjective reports and, although Dr. Reynold[s] was unaware, her subjective reports were not consistent with the other objective and medical evidence of record. However, after conceding that his initial conclusions were inaccurate, the doctor attempted to suggest that limitation still existed, but that the basis was now emotional as opposed to cognitive or memory deficit. However, the undersigned carefully reviewed all of the evidence and concluded that just as his initial conclusions were void of such findings, the record too is void of such findings. As discussed [in the following], the record is thin on any objective evidence of emotional or other mental issue affecting [McCloud's] capacity for greater than simple work activity, social functioning or activities of daily living.

(R. 33).

The evidence of McCloud's medical problems before her consultative examination with Dr. Reynolds does not substantiate his opinions. The only evidence of an inability to remember and carry out instructions due to Mood Disorder, NOS, Anxiety Disorder, NOS, or Obsessive Cognitive Disorder that predates McCloud's examination with Dr. Reynolds were reported by her on May 9, 2013, during a consultative examination at the Selma Family Medicine Center at which she complained of "OCD," "manic depression," "insomnia," and "fatigue" in addition to "carpal tunnel syndrome" and "bilateral foot pain." (R. 411 [SSA Ex. 6F]).

The evidence of McCloud's medical problem after her consultative

examination with Dr. Reynolds also does not substantiate his opinions. McCloud visited the Selma Doctor's Clinic, P.C., between September 5, 2013, and January 20, 2015. (*See* R. 439-53 [SSA. Ex. 11F]). On September 5, 2013, it was noted McCloud's "[j]udgment and insight appropriate," she was "[a]lert and oriented to person, place, and time," and "[l]ong term and short term memory intact," (R. 448 [SSA Ex. 11F]); on October 14, 2013, it was noted McCloud had "[n]o [a]nhedoia, [f]eelings of [e]xcessive [g]uilt or [g]randeur, [e]xcesive [a]lcohol or [d]rug use," she had "[a]ppropriate [o]ptimism," and she was "[a]lert and [o]riented," (R. 446 [SSA Ex. 11F]); on September 16, 2014, it was, again, noted McCloud had "[n]o [a]nhedoia, [f]eelings of [e]xcessive [g]uilt or [g]randeur, [e]xcesive [a]lcohol or [d]rug use," she had "[a]ppropriate [o]ptimism," her "[j]udgment and insight [were] appropriate," she was "[a]lert and oriented to person, place, and time," and her "[l]ong term and short term memory [were] intact," (R. 443-44 [SSA Ex. 11F]); and on January 20, 2015, it was noted McCloud was "obsessed with guilt," she felt "hopeless," was "[a]lert and [o]riented," but had "[d]epression," "[a]nxiety," and a "[f]lat effect," (R. 442 [SSA Ex. 11F]).

Between November 11, 2013, and February 27, 2015, McCloud visited the Neurology Consultants of Central Alabama where Walid Freij, M.D, treated her. (*See* R. 465-80 [SSA Ex. 14F]). On December 11, 2013, Dr. Freij noted McCloud's "episodes of zooming out, forgetfulness and erratic behavior could be related to partial complex seizures," "encephalomalacia of [her] left

frontal temporal and parietal regions," "[m]ild mixed sensory motor peripheral neuropathy," and "left carpal tunnel syndrome affecting the sensory and motor components without evidence of denervation," (R. 473 [SSA Ex. 14F]); on December 23, 2014, Dr. Freij assessed McCloud with forgetfulness, (R. 471 [SSA Ex. 14F]); and on January 3, 2014, an electroencephalogram (EEG) was performed on McCloud the results of which were normal, and Dr. Freij noted there were "[n]o focal, diffuse or generalized abnormalities," and concluded "[t]he absence of epile[p]tiform discharge during the EEG recording [did] not rule out the diagnosis of a seizure disorder," (R. 469 [SSA Ex. 14F]).

Between January 9, 2015, and July 8, 2015, McCloud visited Behavioral Health of Selma for treatment with Dr. Reynolds. (*See* R. 457-64 [SSA Ex. 13F]; R. 481-90 [SSA Ex. 15F]). On January 9, 2015, Dr. Reynolds diagnosed McCloud with bipolar disorder, NOS, major depression, and agoraphobia and noted:

> McCloud presented as an alert and irritable 53 year old Caucasian female who is oriented to all spheres. Speech is mildly pressured. Behavior is unremarkable. Mood is "pretty bad." Affect is irritable and dysphoric. [ ]McCloud denies suicidal or homicidal ideation impulse or plan. Thought associations are tight. Thought content is logical. There is no history of symptoms of psychotic intrusions. Recent memory is intact by trip to the examination and recent meals. Remote memory is intact by history of previous events. Insight is rather shallow and guarded. [ ]McCloud acknowledges mistrust of others including this writer. History of social judgment is fair.

(R. 459 [SSA Ex. 13F]).

On January 28, 2015, Dr. Reynolds's diagnoses changed to bipolar 1, current or most recent episode depressed, moderate; agoraphobia; and panic disorder. Dr. Reynolds noted:

> McCloud appears friendly, fully communicative, but tense. Her speech is pressured with normal volume. There is no difficulty naming objects or repeating phrases. She is overtalkative. Affect is appropriate, full range, and congruent with mood. There are no apparent signs of hallucinations, delusions, bizarre behaviors, or other indicators of psychotic process. Associations are intact, thinking is logical, and thought content appears appropriate. The patient convincingly denies suicidal ideas or intentions. Homicidal ideas or intentions are denied. Cognitive functioning and fund of knowledge is intact and age appropriate. Short and long term memory are intact, as is ability to abstract and do arithmetic calculations. This patient is fully oriented. Vocabulary and fund of knowledge indicate cognitive functioning in the normal range. Insight into problems appears fair. Judgment appears fair. There are signs of anxiety. [ ]McCloud's behavior in the sessions was cooperative and attentive with no gross behavioral abnormalities. No signs of withdrawal or intoxication are in evidence.
>
> . . .
>
> [McCloud] continues to need outpatient treatment. [McCloud] continues to exhibit symptoms of an emotional disorder that interfere with [day-to-day] functioning and [McCloud] is unable to alleviate these symptoms.

(R. 461 [SSA Ex. 13F]).

On February 25, 2015, Dr. Reynolds's diagnoses remained the same, and he noted:

> McCloud presented as friendly, full communicative, and appears happy. Her speech is pressured, with normal volume. There is no difficulty naming objects or repeating phrases. She is excited. Her affect is congruent with mood. Her associations are loose. There are no apparent signs of hallucinations, delusions, bizarre behaviors, or other indicators of psychotic

15

process. Thinking is logical, and thought content appears appropriate. No suicidal ideas or intentions are present today. Homicidal ideas or intentions are denied. Cognitive functioning and fund of knowledge is intact and age appropriate. Short and long term memory are intact, as is ability to abstract and do arithmetic calculations. This patient is fully oriented. Vocabulary and fund of knowledge indicate cognitive functioning in the normal range. Insight into problems appears to be poor. Judgment appears fair. There are no signs of anxiety. [ ]McCloud is fidgety. No signs of withdrawal or intoxication are in evidence.

. . .

[McCloud] continues to need outpatient treatment. [McCloud] continues to exhibit symptoms of an emotional disorder that interfere[s] with [day-to-day] functioning and [McCloud] is unable to alleviate these symptoms.

(R. 463 [SSA Ex. 13F]).

On March 11, 2015, Dr. Reynolds's diagnoses remained the same, and he noted:

McCloud appears angry, fully communicative, and tense. She exhibits speech that is normal in rate, volume, and articulation and is coherent and spontaneous. Language skills are intact. Demeanor is sad. Thought content is depressed. Body posture and attitude convey an underlying depressed mood. Facial expression and general demeanor reveal depressed mood. Her affect is congruent with mood. There are no apparent signs of hallucinations, delusions, bizarre behaviors, or other indicators of psychotic process. Associations are intact, thinking is logical, and thought content appears appropriate. Suicidal ideas are convincingly denied. Homicidal ideas or memory are intact, as is ability to abstract and do arithmetic calculations. This patient is fully oriented. Vocabulary and fund of knowledge indicate cognitive functioning in the normal range. Insight into problems appears fair. Judgment appears fair. [ ]McCloud is fidgety. [ ]McCloud is restless. [ ]McCloud's behavior in the session was cooperative. No signs of withdrawal or intoxication are in evidence.

. . .

[McCloud] continues to need outpatient treatment. [McCloud] continues to exhibit symptoms of an emotional disorder that interfere with [day-to-day] functioning and [McCloud] is unable to alleviate these symptoms.

(R. 481 [SSA Ex. 15F]).

On April 1, 2015, Dr. Reynolds's diagnoses remained the same, and he

noted:

McCloud appears calm, fully communicative, but tense. She exhibits speech that is normal in rate, volume, and articulation and is coherent and spontaneous. Language skills are intact. She appears downcast. Thought content is depressed. Body posture and attitude convey an underlying depressed mood. Her affect is blunted. There are no apparent signs of hallucinations, delusions, bizarre behaviors, or other indicators of psychotic process. Associations are intact, thinking is logical, and thought content appears appropriate. No suicidal ideas or intentions are present today. Homicidal ideas or intentions are denied. [McCloud] correctly gives the current date, name and location and is situationally aware. Memory for immediate, recent, and remote events is intact. [McCloud] presents as alert. Vocabulary and fund of knowledge indicate cognitive functioning in the normal range. Insight into problems appears fair. Judgment appears fair. There are signs of anxiety. There are no signs of hyperactive or attentional difficulties. [ ]McCloud's behavior in the session was cooperative. No signs of withdrawal or intoxication are in evidence.

. . .

[McCloud] continues to need outpatient treatment. [McCloud] continues to exhibit symptoms of an emotional disorder that interfere with [day-to-day] functioning and [McCloud] is unable to alleviate these symptoms.

(R. 483 [SSA Ex. 15F]).

On May 13, 2015, Dr. Reynolds's diagnoses remained the same, and he

noted:

> McCloud appears glum, communicative, and tense. She exhibits speech that is normal in rate, volume, and articular and is coherent and spontaneous. Language skills are intact. She appears downcast. Thought content is depressed. Her affect is appropriate to verbal content. There are no apparent signs of hallucinations, delusions, bizarre behaviors, or other indicators of psychotic process. Associations are intact, thinking is logical, and thought content appears appropriate. No suicidal ideas or intentions are present today. Homicidal ideas or intentions are denied. [McCloud] correctly gives the current date, name, and location and is situationally aware. Memory for immediate, recent, and remote events is intact. [McCloud] presents as alert. Vocabulary and fund of knowledge indicate cognitive functioning in the normal range. Insight into problems appears fair. Judgment appears fair. There are signs of anxiety. There are no signs of hyperactive or attentional difficulties. [ ]McCloud's behavior in the session was cooperative. No signs of withdrawal or intoxication are in evidence.

> . . .

> [McCloud] continues to need outpatient treatment. [McCloud] continues to exhibit symptoms of an emotional disorder that interferes with [day-to-day] functioning and [McCloud] is unable to alleviate these symptoms.

(R. 485 [SSA Ex. 15F]).

On June 10, 2015, Dr. Reynolds's diagnoses remained the same, and he

noted:

> McCloud presents as irritable, distracted, and tense. Her speech is pressured, with normal volume. There is no difficulty naming objects or repeating phrases. She is irritable. Her affect is labile. Her associations are loose. A paranoid manner and other signs of paranoid process are present. No suicidal ideas or intentions are present today. Homicidal ideas or intentions are denied. Cognitive functioning and fund of knowledge are intact and age appropriate. Short and long term memory are intact, as is ability to abstract and do arithmetic calculations. This patient is fully oriented. Vocabulary and fund of knowledge

indicate cognitive functioning in the normal range, insight into problems appears to be poor. Judgment appears fair. There are signs of anxiety. She is easily distracted. [ ]McCloud displayed uncooperative behavior during the examination. No signs of withdrawal of intoxication are in evidence.

. . .

[McCloud] continues to need outpatient treatment. [McCloud] continues to exhibit symptoms of an emotional disorder that interfere[s] with [day-to-day] functioning and [McCloud] is unable to alleviate these symptoms.

(R. 487 [SSA Ex. 15F]).

Finally, on June 10, 2015, Dr. Reynolds's diagnoses remained the same, and he noted:

McCloud appears friendly, attentive, communicative, and relaxed. She exhibits speech that is normal in rate, volume, and articulation and is coherent and spontaneous. Language skills are intact. Mood presents as normal with no signs of either depression or mood elevation. Affect is appropriate, full range, and psychotic process. Associations are intact, thinking is logical, and thought content appears appropriate. [McCloud] convincingly denies suicidal ideas or intentions. Homicidal ideas or intentions are denied. Cognitive functioning and fund of knowledge are intact and age appropriate. Short and long term memory are intact, as is ability to abstract and do arithmetic calculations. [McCloud] is fully oriented. Vocabulary and fund of knowledge indicate cognitive functioning in the normal range. Insight into problems appears fair. Judgment appears fair. There are no signs of anxiety. [ ]McCloud is fidgety. No signs of withdrawal or intoxication are in evidence.

. . .

[McCloud] continues to need outpatient treatment. [McCloud] continues to exhibit symptoms of an emotional disorder that interfere with [day-to-day] functioning and [McCloud] is unable to alleviate these symptoms.

(R. 489 [SSA Ex. 15F]).

The medical evidence does not substantiate Dr. Reynolds's opinion McCloud had an inability to remember and carry out instructions due to Mood Disorder, NOS, Anxiety Disorder, NOS, or Obsessive Cognitive Disorder. McCloud's reported daily activities, also, do not substantiate Dr. Reynolds's opinions. At McCloud's examination with Dr. Reynolds on June 3, 2013, he noted:

> McCloud conducts activities of daily living autonomously. She reports that times of awaking and going to sleep varies. She reports that she eats two meals a day. [ ]McCloud reports that she does grocery shopping, housework, cooking, and management of finances together with her husband. [ ]McCloud reports that she attends church. [ ]McCloud reports that in her spare time she enjoys sitting outdoors. [ ]McCloud reports that she previously enjoyed camping and going dancing. She reports that she no longer does these activities. [ ]McCloud reports that she maintained some friendships. She reports that she has a driver's license and drives.

(R. 420 [SSA Ex. 7F]).

Also, McCloud reported she feeds and waters her dogs; prepares simple meals; loads the washer, dryer, and dishwasher; sits on the porch to bird and squirrel watch; drives a vehicle; shops in stores; has an interest in bird watching; enjoys being outdoors; visits with friends twice a month to cook out and play cards or board games; attends church; when going to places, she does not need to be reminded to go places and does not need someone to accompany her; does not have any problems getting along with family, friends, neighbors, or others; is able to walk for approximately thirty (30) minutes; is able to pay attention for thirty (30) minutes; does not have a

problem following written instructions; and is able to follow simple spoken instructions. (R. 265-72 [SSA Ex. 7E]). Substantial evidence supports the ALJ's decision to assign little weight to Dr. Reynolds's opinions.

On July 22, 2013, Harold R. Veits, M.D., a non-examining state agency consultant, completed a Psychiatric Review Technique Form of McCloud. (R. 98-100 [SSA Ex. 2A]). Dr. Veits assessed McCloud under listings 12.04 and 12.06 for affective disorders anxiety-related disorders, respectively, and determined McCloud had mild restriction of activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation. (R. 99 [SSA Ex. 2A]). Dr. Veits, also, completed a Mental Residual Functional Capacity Assessment of McCloud in which he opined she "has the ability to understand, remember and carry out very short and simple instructions" and "can attend for two hour periods." (R. 103-04 [SSA Ex. 2A]). The ALJ assigned Dr. Veits's opinions no weight because they were inconsistent with the remainder of the record. (R. 41).

Dr. Veits's opinions were, in part, based on the medical evidence provided by Dr. Reynolds, (R. 98-99 [SSA Ex. 2A]), which the Court found unsupported by the medical evidence of record, *see supra* at 11-21, and Dr. Veits's opinions are inconsistent with the remainder of the medical evidence of record, *see supra* at 12-21. Therefore, the ALJ did not commit error by assigning no weight to Dr. Veits's opinions.

For these reasons, the Court **OVERRULES** McCloud's assertion of reversible error in Claim 2.

## C.     Claim 3

"The contention that the combination of investigative and adjudicative functions necessarily creates an unconstitutional risk of bias in administrative adjudication has a much more difficult burden of persuasion to carry." *Withrow v. Larkin*, 421 U.S. 35, 47, 95 S. Ct. 1456, 1464, 43 L. Ed. 2d 712 (1975). There is a "presumption of honesty and integrity in those serving as adjudicators." *Id.* "[A]n allegation of ALJ unfairness, prejudice, partiality, or bias . . . [is reviewed] under the abuse of discretion standard." SSR 13-1p. An ALJ will be found to have abused her discretion when "there has been an improper exercise, or a failure to exercise, administrative authority." *Id.* An ALJ abuses her discretion "if the record shows that the ALJ failed to conduct a full and fair hearing by refusing to allow the claimant to testify or cross-examine witnesses." *Id.*

McCloud takes exception to certain interactions with the ALJ during the hearing, (*see* Doc. 18, at 14-15)–those interactions are included in the hearing transcript excerpt that follows:

> Q.     Before you stopped working did any doctor specifically tell you you could no longer work?
>
> A.     No, they just kept telling that I was suffering from stress.
>
> Q.     Ma'am, I'm going to ask the questions, and you please try to keep your answers focused [on] that specific question.

Again, your counsel will get to the other thing. I'm trying to make sure that I have the record straight, then I can give the mike to your counsel.

At the time you stopped working did a doctor tell you you could no longer work

A.     No.

Q.     Did you tell your doctor, I can no longer work?

A.     Yes.

Q.     And what did your doctor say?

A.     He put me on an anti-depressant and Xanax for stress.

Q.     But he did not tell you to stop working.

A.     No.

Q.     At any time has it been your testimony that you received dedicated mental health care from any doctor, as when he put you on medication any time before or after September 19th? Did he send you over to see a psychiatrist or psychologist?

A.     No.

Q.     Did you attempt to go see a psychologist or psychiatrist?

A.     Not at that time.

Q.     At what time did you attempt to see a psychiatrist or psychologist?

A.     When, when I was not, when I had quit my job I went, I went to my - -

Q.     Ma'am, you're doing it again. I need just a chronological answer to my question. When did you pursue this care?

A.     A year, a year or two after I was no longer working.

Q.     So you stopped working for a year before January 2011. You [w]ent to seek mental health care a year later.

A.     Yes, sir.

Q.     I am going to ask you a logical question, and try to keep your answer plain and brief.
       If you believed you were becoming suicidal, if you believed you could no longer work, all of these things were coming to a point where you just had to be out of work, why would you wait a year instead of immediately seeking mental health care while you had the insurance, while you had the capability to do so?

A.     It's part of the disease.  I just, I felt like - -

Q.     What disease?

A.     The bipolar disease.

Q.     Ma'am, try to stay with me.  Your allegations include congenital defect, vascular disease, and carpal tunnel syndrome. There is no mention in your allegations of a mental impairment.

ATTY:       Pardon me, Your Honor.  There's medical evidence - -

ALJ: That wasn't my question, counsel.   That wasn't my question.  My question was specific.

BY THE ADMINISTRATIVE LAW JUDGE:

Q.     I saw no mention of a mental impairment in your allegation.  Why is that?

A.     The mental is, I always had the mental, but it isn't, it's because of the brain damage.   My brain doesn't function normally.  I've been on medication since I was 21, but, and I have - -

Q.     Okay, so - -

A.     Okay.

Q.     Per your earlier testimony with your congenital defect you completed high school.

A.     Yes, sir.

Q.     You studied –

A.     Uh huh.

Q.     You completed a degree in office administration. And you have a good work history including, I'm almost sure, that the vocational expert's going to tell me all of your work history is at least semiskilled work.

So we cannot go back now and say the congenital issue 20 years later caused you to function. In fact, just the history that you're giving me in your testimony this morning detracts from what you're telling me, that that effect is now causing you to be unable to work. That's first.

Second. Follow me closely. Per your testimony, it wasn't cognitive inability to work, it wasn't intellectual inability to work, it was stress. That's not a factor going back 20 years based on your history and presentation here today.

So is it these physical things that you allege? Or is it your mental health that stopped you from working?

A.     They go hand in hand. It was only as I've aged, I was able to control and able to overcome a lot of the problems that I was battling when I was young. As I've aged they've become out of control. It's only as I've gotten older that it's become out of control where the medications that I've been on and off stopped working. It's always been a battle. It's just that when I was younger it was a battle easier to fight.

Now in addition to the problems, the mental problem that I've battled, I also have the physical problems which just make the mental problems worse.

And I did seek help.

ALJ:  Counsel, the floor is yours.

(R. 59-63).

The statements to which McCloud directs the Court's attention, in context, show the ALJ interrupting McCloud when her answers diverged from or elaborated on the question the ALJ asked her, but, as the ALJ

explained, "Ma'am, I'm going to ask the questions, and you please try to keep your answers focused [on] that specific question. Again, your counsel will get to the other thing. I'm trying to make sure that I have the record straight, then I can give the mike to your counsel." (R. 59-60). Indeed, McCloud was able to elaborate on her condition after the ALJ received answers to his questions, (*see* R. 63), and counsel for McCloud was able to question McCloud at length to fully flesh out her condition and complete the record, (*see* R. 63-77). At no point throughout the hearing, did the ALJ express an explicit bias against McCloud. (*See* R. 50-85). McCloud infers bias from the ALJ's interruptions but such does not rise to an abuse of discretion. *See Litecky v. United States*, 510 U.S. 540, 555-56, 114 S. Ct. 1147, 1157, 127 L. Ed. 2d 474 (1994) ("[J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible. . . . *Not* establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display. A judge's ordinary efforts at courtroom administration-even a stern and short-tempered judge's ordinary efforts at courtroom administration-remain

immune."). In sum, the ALJ did not abuse his discretion.

For these reasons, the Court **OVERRULES** McCloud's assertion of reversible error in Claim 3.

## D.     Claim 4

In Claim 4, McCloud asserts that, because the ALJ assigned little weight to Drs. Chittom's and Freij's opinions, and failed to assign weight to the opinions of the state agency single decision maker ("SDM"), Suzanne Manley, in violation of SSR 96-6p and 96-8, the ALJ's RFC "was not rooted in the record." (Doc. 18, at 8). McCloud, also, argues the ALJ "did not consider the combined impact of physical and psychological impairments." (Doc. 18, at 19).

Preliminarily, SSR 96-6p pertains to state agency medical and psychological consultants and not to SDMs. *See* SSR 96-6p ("At the [ALJ] and Appeals Council levels, RFC assessments by State agency medical or psychological consultants or other program physicians or psychologists are to be considered and addressed in the decision as medical opinions from nonexamining sources about what the individual can still do despite his or her impairment(s)."); *Siverio v. Comm'r of Soc. Sec.*, 461 F. App'x 869, 871 (11th Cir. 2012) ("[T]he 'SDM' designation connotes no medical credentials. *See* [20 C.F.R.] § 404.906(a), (b)(2). Indeed, the SSA's Program Operations Manual System ("POMS") explicitly distinguishes RFC assessments produced by an SDM from those produced by a medical consultant, and states that

'SDM-completed forms are not opinions evidence at the appeals level.'" (citation omitted)).[8] McCloud's argument the ALJ did not consider her impairments in combination is without merit since he expressly did so when he determined her impairments were severe in combination. (R. 29).

The Court construes McCloud's remaining arguments to assert (1) the ALJ is required to adopt at least one medical opinion in formulating an RFC, and (2) the ALJ did not sufficiently show her work in formulating McCloud's RFC.

The Court rejects both assertions. While the Social Security regulations require ALJs to consider all medical opinions in the record when making a disability determination, *see* 20 C.F.R. §§ 404.1527(b) & 416.927(b), "[n]othing in the regulations requires the ALJ to accept at least one medical opinion before rendering a decision—indeed, an ALJ may make a disability determination without any medical opinion in the record." *Hale v. Colvin*, Civil Action No. 14-00222-CG-N, 2015 WL 3397939, at *11 (S.D. Ala. Apr. 24, 2015), *report and recommendation adopted*, 2015 WL 3397628 (S.D. Ala. May 26, 2015); *see also Packer v. Astrue*, Civil Action No. 11-0084-CG-N, 2013 WL 593497, at *3 (S.D. Ala. Feb. 14, 2013) (Granade, J.) ("[T]he ALJ is not precluded from making a proper RFC determination in the absence of an opinion from an acceptable medical source." (internal quotation marks and

---

[8] In this Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2 (effective Dec. 1, 2014). *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

citation omitted)), *aff'd*, *Packer v. Comm'r, Soc. Sec. Admin.*, 542 F. App'x 890 (11th Cir. Oct. 29, 2013) (per curiam); *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) ("[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question. The ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." (internal quotation marks and citation omitted)); 20 C.F.R. §§ 404.1527(a)(2) & 416.927(a)(2) ("Evidence that you submit or that we obtain **may** contain medical opinions." (emphasis added)); 20 C.F.R. §§ 404.1546 & 416.946 ("If your case is at the administrative law judge hearing level . . . the administrative law judge . . . is responsible for assessing your residual functional capacity."). The ALJ properly assigned little weight to Drs. Chittom's and Freij's opinions[9]; no weight to the SDM's and Dr. Veits's opinions[10]; and no weight and some, but not great weight to Dr. Reynolds's opinions. Accordingly, the ALJ was not required to "fully reflect" any of those

---

[9] The ALJ assigned Dr. Chittom's opinion "McCloud is disabled and has been for quite some time," (R. 451 [SSA Ex. 11F]), "little weight" because it was "inconsistent with all records, including his records, (R. 41). The ALJ assigned "little weight," (R. 42), to Dr. Freij's opinion, found in a "Clinical Assessment of Pain" form, that McCloud had "[p]ain . . . to such an extent as to be distracting to adequate performance of daily activities of work;" had "[g]reatly increased pain and to such a degree as to cause distraction from or total abandonment of task;" and "[d]rug side effects can be expected to be significant and to limit effectiveness due to distraction, inattention, drowsiness, etc.," (R. 466 [SSA Ex. 14F]), because "[t]he reasoning behind his assessment [was] unfounded," (R. 42).

[10] Moreover, the opinion of a non-examining physician "is entitled to little weight and taken alone does not constitute substantial evidence to support an administrative decision." *E.g., Swindle v. Sullivan*, 914 F.2d 222, 226 n.3 (11th Cir. 1990) (per curiam).

opinions in the RFC.

"A clear articulation of both fact and law is essential to our ability to conduct a review that is both limited and meaningful." *Owens v. Heckler*, 748 F.2d 1511, 1514-15 (11th Cir. 1984) (per curiam); *see also Freeman v. Barnhart*, 220 F. App'x 957, 959-60 (11th Cir. Mar. 23, 2007) (per curiam) ("The ALJ has a duty to make clear the weight accorded to each item of evidence and the reasons for the decision so that a reviewing court will be able to determine whether the ultimate decision is based on substantial evidence." *Cowart v. Schweiker,* 662 F.2d 731, 735 (11th Cir. 1981)). Nevertheless, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is not enough to enable the district court . . . to conclude that the ALJ considered her medical condition as a whole." *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam) (internal quotation marks omitted). In formulating the RFC at Step Four, the ALJ thoroughly discussed and weighed the evidence of record and drew conclusions from that evidence. Apart from the weight the ALJ assigned the above-mentioned medical opinions and the opinion of the SDM, McCloud points to no evidence the ALJ allegedly incorrectly or insufficiently assessed. Rather, McCloud appears to assert only that the ALJ failed to adequately show his work in applying Social Security Ruling 96-8p. However, both this Circuit and others have repeatedly rejected similar contentions that an ALJ's

failure to expressly show his or her work under SSR 96-8p is automatic grounds for reversal. *See Freeman*, 220 F. App'x at 959-60 ("Freeman contends that the ALJ failed to identify her functional limitations and work-related abilities on a function-by-function basis. . . . While the ALJ could have been more specific and explicit in his findings, he did consider all of the evidence and found that it did not support the level of disability Freeman claimed. Only after he determined that she failed to carry her burden of showing that she had become disabled from performing any of her work-related activities did he state that she could perform light exertional activity. Therefore, the ALJ complied with SSR 96–8p by considering Freeman's functional limitations and restrictions and, only after he found none, proceeded to express her residual functional limitations in terms of exertional levels. Furthermore, the ALJ's analysis of the evidence and statement that Freeman could perform light work indicated how much work-related activity she could perform because 'light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8–hour workday.' SSR 83–10."); *Castel v. Comm'r of Soc. Sec.*, 355 F. App'x 260, 263 (11th Cir. Nov. 30, 2009) ("Castel argues that the ALJ reached an RFC determination without going through a function-by-function analysis. Specifically, Castel claims that the ALJ did not perform the function-by-function analysis to determine Castel's ability to handle strength demands. This argument is unfounded. The ALJ made a determination of Castel's RFC at step four of the function-by-function

analysis. The ALJ considered two disability examiners' reports, Castel's testimony, and two Disability Determination Services' ('DDS') reports in arriving at Castel's RFC. *See* SSR 96–8p . . . (advising that the RFC assessment must consider all relevant evidence, including medical history, medical evaluations, daily activities, and lay evidence). The ALJ ultimately decided that Castel was capable of medium exertion level work and thus was capable of performing past relevant work. . . . We do not require the ALJ to 'specifically refer to every piece of evidence in his decision,' so long as the decision is sufficient to allow us to conclude that the ALJ considered the claimant's medical condition as a whole. *Dyer v. Barnhart,* 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam). The ALJ found that the medium level work determination was consistent with the medical evidence and found Castel's RFC to be at a medium level of work. The ALJ performed a proper RFC function analysis, based on substantial evidence, and we shall defer to his conclusions."); *Carson v. Comm'r of Soc. Sec.*, 440 F. App'x 863, 864 (11th Cir. Sept. 21, 2011) (per curiam) ("Following [SSR 96-8p's 'function-by-function'] rubric, the ALJ fully discussed and evaluated the medical evidence, Mr. Carson's testimony, and the effect each impairment has on his daily activities. While, the ALJ did not specifically refer to Mr. Carson's ability to walk or stand, the ALJ did limit Mr. Carson's exertional level of work to 'light work.' 'Light work' by definition limits the amount an individual can walk or stand for approximately six hours in an eight-hour work day. *See* SSR 83–10,

1983 WL 31251 (S.S.A.). Furthermore, the ALJ's thorough evaluation of Mr. Carson's case led the ALJ to adopt additional limitations to Mr. Carson's ability to perform light work. Simply because the ALJ chose not to adopt further limitations on Mr. Carson's ability to walk or stand, does not mean the ALJ did not properly consider the alleged limitations."); *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) ("Where an ALJ's analysis at Step Four regarding a claimant's functional limitations and restrictions affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence such that additional analysis would be unnecessary or superfluous, we agree with our sister Circuits that remand is not necessary merely because an explicit function-by-function analysis was not performed." *Zatz v. Astrue*, 346 F. App'x 107, 111 (7th Cir. Oct. 5, 2009) (per curiam); *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *Depover v. Barnhart*, 349 F.3d 563, 567–68 (8th Cir. 2003); *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. Mar. 4, 2002) (per curiam)); *Chavez v. Astrue*, 276 F. App'x 627, 627-28 (9th Cir. May 1, 2008) (per curiam) ("Chavez claims that the ALJ committed legal error by determining his mental residual functional capacity without performing a function-by-function assessment as required by Social Security Ruling 96-8p, 1996 WL 374184, at *3 (July 2, 1996). This claim fails because the ALJ considered and noted 'all of the relevant evidence' bearing on Chavez's 'ability to do work-related activities,' as required by the function-by-function

analysis. *See* Soc. Sec. Ruling 96-8p, 1996 WL 374184, at *3."); *Hendron v. Colvin*, 767 F.3d 951, 956-57 (10th Cir. 2014) (rejecting claimant's contention that the ALJ's "RFC is not in the proper form" because the ALJ did not "separately discuss and make findings regarding her abilities to sit, stand, walk, lift, carry, push, or pull" (citing *Keyes–Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) ("Where, as here, we can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal. In conducting our review, we should, indeed must, exercise common sense. . . . [W]e cannot insist on technical perfection.")).

Accordingly, the Court **OVERRULES** McCloud's assertion of reversible error in Claim 4.

## V.     Conclusion

In accordance with the foregoing analysis, it is **ORDERED** that the Commissioner's final decision issued April 28, 2016, denying McCloud's applications for PoD and DIB is **AFFIRMED** under 42 U.S.C. § 405(g) and 1383(c)(3).

Final judgment shall issue separately in accordance with this Order and Rule 58, FED. R. CIV. P.

**DONE** and **ORDERED** this the 12th day of September 2017.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**